Carlos  M.  RENTERIA,
Plaintiff–Appellant/Cross–Appellee,

v.

COLORADO STATE DEPARTMENT OF
PERSONNEL, Joann Soker, State Per-
sonnel Director, and Colorado Depart-
ment of Labor and Employment, John
J. Donlon, Executive Director, Defen-
dants–Appellees/Cross–Appellants.

No. 89SA460.

Supreme Court of Colorado,
En Banc.

May 20, 1991.

As Modified on Denial of Rehearing
June 10, 1991.

Eva Camacho Woodard, Lakewood, for plaintiff-appellant/cross-appellee.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto and Paul H. Chan, Asst. Attys. Gen., Human Resources Section, Denver, for defendants-appellees/cross-appellants.

Justice MULLARKEY delivered the Opinion of the Court.

The appellant, Carlos Renteria (Renteria), appeals[1] from a Denver District Court decision holding that section 24–50–104(3)(g), 10B C.R.S. (1988), governs the reallocation of his state position, and is constitutional. Because the district court held that the State Department of Personnel's Individual Allocation Review Panel improperly placed the burden of proof on the plaintiff, it remanded the case back to the Panel. We affirm in part, reverse in part, and remand with directions.

I.

Renteria is a certified state employee who is employed by the Labor Standards Unit of the Division of Labor, a subdivision of the defendant, the Department of Labor and Employment (DOLE). Until July 21, 1988, Renteria held the position and performed the duties of Supervisory Investigator I. According to the written job description, identified as a PC–8, the person in this position was responsible for planning, implementing and monitoring the functions of the Labor Standards Unit under the general supervision of the Deputy Director and the Director of the Division of Labor. A major duty of the position included supervising at least two other investigators and clerical workers. The pay grade for the position was 91.

On July 21, 1988 Renteria's supervisor, Robert Husson ("Husson" or the "appointing authority"), revised Renteria's job description by writing a new PC–8 which eliminated the duties involving supervision and implementation of enforcement procedures. Those duties later were included in a new job description, Administrative Officer III. Because the revised job description for Renteria's position no longer included supervisory duties, specifically supervision of at least two investigators, the position could not remain in the Supervisory Investigator class. DOLE claims that the revision of Renteria's job description was part of an ongoing reorganization of the Labor Standards Unit. Renteria alleges instead that the revision of the job description and the eventual abolition of his supervisory position constituted a form of discipline.

On the same day that he rewrote the PC–8, Husson requested a "desk audit" of Renteria's position, which is a review of a position's duties to ensure that it is properly allocated under the State Personnel System. Renteria maintains that Husson only orally informed him on July 21 that henceforth he would be performing the duties of a lower level investigator and that Husson told him that he was being replaced because of his supervisory style. When Renteria asked for an opportunity to correct his performance, Husson allegedly replied that Renteria would never be able to change because he was a military veteran. Soon thereafter, Husson created the new position of Administrative Officer III. Renteria did not apply for that vacancy and the position was filled.[2]

Steve Calvert, a personnel analyst employed by DOLE, conducted the desk audit

---

1. This court has jurisdiction because Renteria appeals from the final judgment of the district court upholding the constitutionality of a statute. *See* § 13–4–102, 6A C.R.S. (1987).

2. The record indicates that Renteria was not notified by DOLE until December 6, 1988 that his own position would be abolished and reallocated to the Investigator class in 30 days. By that time the new position at the lower pay grade had been filled.

and notified Renteria of the preliminary decision to downgrade his position to the Investigator class by a letter dated November 10, 1988, based on the results of the desk audit. This meant that Renteria's position would be decreased by 10 pay grades from 91 to 81 with a resulting salary decrease of $546 per month. In the letter, he advised Renteria that the preliminary decision would become final unless Renteria responded to him within 10 days. He also described in detail an employee's right to appeal allocation decisions to the State Personnel Director ("the Director") pursuant to section 24–50–104(3)(g) within 10 days after the decision becomes final. Renteria subsequently filed an appeal with the Director and the Director referred his appeal to a three-member Individual Allocation Review Panel ("the Panel") as authorized by section 24–50–104(3)(g). The Director also advised Renteria that any claims of discrimination relating to the reallocation could be raised only before the State Personnel Board ("the Board") and the Director informed him that she had directed a copy of his appeal letter to the Board. Renteria pursued his discrimination claim before the Board and it was dismissed. The record does not indicate the content of the discrimination claim.

In his appeal to the Panel, Renteria alleged that the reassignment of his supervisory duties which resulted in the reallocation decision was a pretext for a disciplinary action taken against him out of personal animosity. By written decision dated January 30, 1988, the Panel upheld the reallocation decision, but stated that it did not have the authority to consider Renteria's allegation that the reassignment of duties that resulted in the revised PC–8 was a disciplinary action. The Panel concluded by stating that Renteria had not met his burden of proving that the auditor was arbitrary and capricious and that the agency action should be upheld.

Renteria sought judicial review of the Panel's decision pursuant to section 24–4–106, 10A C.R.S. (1988), and also alleged that section 24–50–104(3)(g) violated his right to a hearing before the State Personnel Board under Article XII, Section 13, of the Colorado Constitution and his right to due process under Article II, Section 25, of the Colorado Constitution and the Fourteenth Amendment to the United States Constitution.

By written order, the district court held that the agency action was controlled by section 24–50–104 which governs allocation decisions and not by section 24–50–125, 10B C.R.S. (1988), which governs disciplinary actions; the procedures contained in section 24–50–104(3)(g) were not unconstitutional; the Panel improperly placed the burden of proof on the employee; and Renteria was not entitled to attorney's fees. In accordance with its holding on the burden of proof, the court ordered that the matter be remanded to the Panel for rehearing and decision pursuant to section 24–50–104(3)(g) and required the agency to demonstrate that the reallocation was not arbitrary, capricious or contrary to law. This appeal and cross-appeal followed.

## II.

Renteria brings two constitutional claims. First, he claims that section 24–50–104(3)(g) violates Article XII, Section 13(8), of the Colorado Constitution. Second, he claims that section 24–50–104(3)(g) is unconstitutional because its procedure deprived him of due process of law under the state and federal constitutions.

We will analyze these claims in light of several well-established principles. First, we note that a statute is presumed to be constitutional unless the party challenging the statute's constitutionality can prove the statute unconstitutional beyond a reasonable doubt. *See Anderson v. Colorado Dep't of Personnel,* 756 P.2d 969, 975 (Colo.1988). Second, whenever it is reasonable and practical, a statute must be construed in a manner consistent with constitutional requirements. *See Romero v. Sandoval,* 685 P.2d 772, 776 (Colo.1984). Finally, when a statute is susceptible to both constitutional and unconstitutional interpretations, we must adopt the constitutional interpretation of the statute. *See Parish v. Lamm,* 758 P.2d 1356, 1364

(Colo.1988); *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930, 947–48 (Colo.1985).

For the reasons discussed below, we hold that Renteria has failed to prove that the statute is unconstitutional under Article XII, Section 13(8). Because we hold that Renteria has a right to a hearing before the Board under section 24–50–125 separate and apart from his right to appeal the reallocation decision to the Director, we do not reach his due process claims.

A.

■ We now turn to Renteria's claim under Article XII, Section 13(8). In the case before us, Renteria was afforded an appeal to the Director pursuant to section 24–50–104(3)(g), which provides:

Any employee directly affected by the allocation of a position to a class may file a written appeal of such allocation with the state personnel director within ten days after notice of the allocation. The appeal shall be heard by the state personnel director or, at his delegation, a three-member panel within sixty calendar days after the written appeal has been received by the state personnel director. Said director or panel shall review the appeal in summary fashion on the basis of written material which may be supplemented by oral argument at the discretion of the director or panel. Said director or panel shall issue a written decision within thirty calendar days after completion of the hearing. The allocation decision may be overturned only if the director or panel finds it to have been arbitrary, capricious, or contrary to rule or law. If the director or panel does not issue such decision within thirty calendar days of completion of the hearing, the allocation decision shall be final. Any decision of the panel or final action of the state personnel director shall be subject to judicial review pursuant to section 24–4–106....

According to this section, Renteria filed his appeal to the Director within ten days of receiving the notice of allocation of his position. On appeal, the Director's Panel reviewed whether the position represented by the revised PC–8 was properly reallocated from the Supervisory Investigator class to the Investigator class. It did not address the issue of whether the reallocation was a pretext for disciplinary action since it determined that it did not have such authority.

The Director's authority under section 24–50–104(3)(f), 10B C.R.S. (1988), to determine the classification of positions derives from her constitutional duty under Article XII, Section 14(4), to administer the day-to-day activities of the State Personnel System. The Director's constitutional authority is distinctly separate from that of the Board. *See Colorado Ass'n of Public Employees v. Lamm,* 677 P.2d 1350, 1355 (Colo.1984); *Spahn v. State Dep't of Personnel,* 44 Colo.App. 446, 448, 615 P.2d 66, 68 (1980). *See also Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988, 992–94 (Colo.1991) (elaboration upon separate functions of the Board and the Director under the Civil Service Amendment and the applicable statutes).

Under Article XII, Section 13(8), the Board has the authority to hear classified employees' appeals of disciplinary actions taken against them by appointing authorities. The constitutional provision reads in full as follows:

Persons in the personnel system of the state shall hold their respective positions during efficient service or until reaching retirement age, as provided by law. They shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties. A person certified to any class or position in the personnel system may be dismissed, suspended, or otherwise disciplined by the appointing authority upon written findings of failure to comply with standards of efficient service or competence, or for willful misconduct, willful failure or inability to perform his duties, or final conviction of a felony or any other offense which involves moral turpitude, or written charges thereof may be filed by any person with the appointing authority,

which shall be promptly determined. Any action of the appointing authority taken under this subsection shall be subject to appeal to the state personnel board, with the right to be heard thereby in person or by counsel, or both.

In *State v. Colorado Civil Rights Commission in re McAllister*, 185 Colo. 42, 521 P.2d 908 (1974), we construed an earlier version of this constitutional provision to mean that the Civil Service Commission had exclusive jurisdiction to determine matters related to disciplinary measures taken against classified employees. We rejected the contention of the Civil Rights Commission that it had concurrent jurisdiction under its statute to determine whether a state employee had been terminated because of sex discrimination. We narrowed the definitions of "employer" and "employee" under the Civil Rights Commission's statute "to exclude from the jurisdiction of the Civil Rights Commission those state employees who are members of the classified civil service," *id.* at 46, 521 P.2d at 910, and we concluded that the employee's sole recourse was to appeal to the Civil Service Commission. *See also State Civil Serv. Comm'n v. Hazlett*, 119 Colo. 173, 201 P.2d 616 (1949) (court held that Civil Service Commission had exclusive jurisdiction to determine for what causes classified employees may be removed from their positions).

Using similar reasoning, Renteria argues that the statute authorizing the Director and the Director's Panel to hear allocation appeals, § 24–50–104(3)(g), is unconstitutional because it infringes upon the State Personnel Board's exclusive jurisdiction. Renteria relies particularly on the second sentence of Article XII, Section 13(8), regarding grading and compensation and the last sentence providing an appeal to the State Personnel Board for "[a]ny action of the appointing authority taken under this subsection...." Renteria contends that, when read together, the two sentences provide that the Board, not the Director, has exclusive jurisdiction over allocation appeals.

It is apparent from reading Article XII, Section 13(8), that the Board has no express constitutional authority concerning allocation decisions. According to the earlier constitutional system under Article XII, Section 13, the Civil Service Commission, which was the Board's predecessor, was authorized to determine "the standardization of all positions" and "the grades of all positions in the classified service." *See* Colo. Const. Art. XII, § 13 (1918, amended 1971); *McAllister*, 185 Colo. at 45, 521 P.2d at 910. When Article XII, Section 13, was amended in 1971, these functions were deleted from the powers delegated to the Board. *See* Colo. Const. Art. XII, § 13. Thus, the Board unlike the former Commission does not classify or allocate positions.

Nor do we find any implied constitutional power in the Board to review allocation decisions. Renteria's argument on this point ignores the plain language of Article XII, Section 13(8), which limits the Board's appellate authority to review of an action "of the appointing authority." *See also* Art. XII, § 14(3) (section authorizes Board to enact rules regarding "appeals from actions by appointing authorities"). Allocation decisions are not actions taken by appointing authorities; rather, such decisions are made by the Director pursuant to section 24–50–104(3)(f). Nothing in that statutory section prohibits the Director from delegating her authority and, according to Board rule, she may delegate her authority, subject to her final review. *See* Board Policy 1–2, 4 C.C.R. 801–1 at 7 (1985). Such delegation may include, as here, the use of a departmental personnel analyst to conduct a desk audit prior to reallocation of a position.⁷

In this case, the appointing authority, Husson, requested a DOLE personnel analyst to conduct an audit of Renteria's position and the analyst's preliminary decision was that the position should be reallocated. The final reallocation decision, however, was not made by either the appointing authority or the personnel analyst. Final decision-making authority is vested in the Director who may adopt or reverse the preliminary decision during the appeals pro-

cess.[3]

Since the Constitution does not vest the Board with authority to review allocation decisions or decisions made by the Director, the legislature could authorize the Director and her Panel to hear such appeals. Therefore, section 24–50–104(3)(g) does not intrude upon the Board's exclusive constitutional jurisdiction.

### B.

■ Next Renteria contends that he was deprived of due process under the state and federal constitutions because the Director and her Panel had no jurisdiction to hear his claim that the appointing authority improperly disciplined him. We need not address his due process claims because we conclude that Renteria has a right to appeal his disciplinary claim to the Board. Because he was not notified of his appeal right as required by Board rule, the district court must remand the case to the Director with directions to transfer the case to the Board for consideration of this aspect of Renteria's appeal.

Article XII, Section 13(8), which is implemented in section 24–50–125, permits an employee to appeal to the Board when he is subjected to a disciplinary action taken by an appointing authority. DOLE concedes that Renteria could have appealed his perceived disciplinary action to the Board under subsection (2) had he done so within the limitations period. Section 24–50–125(2) states:

> Any certified employee disciplined under subsection (1) of this section shall be notified by the appointing authority, by certified letter, no later than five days following the effective date of the action, of the action taken, the specific charges giving rise to such action, and the employee's right of appeal to the board. . . .

Subsection (3) of this section requires an employee to appeal to the Board within ten days after receiving notification of the disciplinary action. § 24–50–125(3). In unusual cases, the Board may permit an ex-

tension if good cause is shown. *Id.* Board Policy 10–1–(E), 4 C.C.R. 801–1 at 114–15 (1989), which was effective from January 1, 1986 through June 30, 1989, required that an employee be notified of his or her right to appeal. It stated:

> Employees and applicants shall be informed of their rights to seek review through grievance, petition for hearing, or appeal, including the time limits in which such rights or options must be exercised, and the official to whom the correspondence should be directed. Except for grievances, the agency official who gives notice of the actions shall be responsible for conveying such information in a timely, accurate, and succinct manner.

Because the record shows that Renteria was not notified of his right to appeal to the Board regarding his claim that the reallocation process was used by the appointing authority for disciplinary purposes, his appeal is not barred as untimely.

■ An employee's time to appeal does not run if the notice did not properly advise the employee of his or her right to appeal. *See Cunningham v. State Personnel Board,* 89CA1241, slip op. at 5 (Colo.Ct. App. March 14, 1991); *Salas v. State Personnel Board,* 775 P.2d 57, 60 (Colo.Ct. App.1988). *See also Quicker v. Colorado Civil Rights Comm'n,* 747 P.2d 682 (Colo. Ct.App.1987) (statute of limitations for filing charge of discriminatory or unfair labor practice was equitably tolled because employer failed to give employee required notice of statutory rights).

In *Cunningham,* the court of appeals addressed an analogous situation. An employee was not notified as required by the Board rule that he could appeal to the Board regarding his claim of discrimination in an examination procedure pursuant to section 24–50–125.3, 10B C.R.S. (1988). Instead, his appeal was directed to the Director who subsequently delegated the re-

---

**3.** The personnel analyst's decision becomes the decision of the Director if there is no appeal.

In this case, of course, Renteria appealed.

view task to a three-member panel that concluded that it did not have jurisdiction to address the employee's discrimination claims. The court of appeals held that the Board still had jurisdiction to entertain the employee's claim because the employee had not received proper notice.

In this case, Renteria should have been notified that he could present his disciplinary claim to the Board or, alternatively, the Director should have transferred that part of his case to the Board. We note that current regulations address the problem of dual jurisdiction. An appeal raising both disciplinary and allocation claims filed with the Director would be considered filed with both the Director and the Board. Board Rule 10–6–1(C), 4 C.C.R. 801–1 at 130 (1989). *See also* Board Rule 10–7–1(B), 4 C.C.R. at 133 (1991) (provides mechanism by which an appeal or petition for hearing relating to discrimination may be filed with the Colorado Civil Rights Division and then forwarded to the Board). Accordingly, we return this case to the district court with directions to remand to the Director who shall then transfer the case to the Board for a hearing.[4]

### III.

■ On cross-appeal, DOLE claims that the district court erred in holding that DOLE had the burden to prove that the reallocation decision was not arbitrary, capricious, or contrary to rule or law. We agree with DOLE. We hold that the Panel properly placed the burden of proof upon Renteria and that the Panel's decision should be upheld.

The standard of review articulated by section 24–50–104(3)(g) is that "[t]he allocation decision may be overturned only if the director or panel finds it to have been arbitrary, capricious or contrary to rule or law." To determine which party had the burden of proof in the administrative proceeding, the district court looked to section 24–4–105(7), 10A C.R.S. (1988), of the State

Administrative Procedure Act, which applies to state agency hearings and determinations. It provides that, "[e]xcept as otherwise provided by statute, the proponent of an order shall have the burden of proof...." In *Orsinger Outdoor Advertising, Inc. v. Department of Highways*, 752 P.2d 55, 67 (Colo.1988), we interpreted section 24–4–105(7) and stated, "The 'proponent' is that party who propounds or proposes something, *Black's Law Dictionary* 1097 (1976), and an 'order' is 'the whole or any part of the final disposition ... by an agency in any matter other than rulemaking,' § 24–4–102(10), 10 C.R.S. (1982)." In that case, we rejected an assertion that the Department of Highways had the burden to prove the party's signs did not comply with departmental regulation and we held that a party seeking a sign permit had the burden of proof. *Id.*

Here, Renteria was the moving party before the Panel because he sought an order voiding the reallocation of his position. For the purposes of section 24–4–105(7), he was the proponent of such an order and bore the burden under section 24–50–104(3)(g) of showing that the reallocation decision was arbitrary, capricious, or contrary to rule or law.

Finally, we consider Renteria's contentions that the reallocation decision must be reversed because Calvert, the DOLE personnel analyst who audited his supervisory position, did not have the authority to make the preliminary reallocation decision and the appointing authority failed to provide Renteria with performance evaluations pursuant to section 24–50–118(1), 10B C.R.S. (1988) (requires supervisors to evaluate the performance of their employees at least once a year). Neither of these contentions, however, is a basis for reversal of the Panel's decision.

■ As we discussed earlier in Part II, the Director may delegate the authority to make preliminary allocation decisions, but final decision-making authority is reserved

---

4. Renteria asserts that he is entitled to reimbursement for his attorney fees and costs pursuant to § 24–50–125.4(5), 10B C.R.S. (1988) and/or § 24–50–125.5(1), 10B C.R.S. (1988).

His arguments may be raised before the Board on remand where an appropriate record can be developed. We express no opinion regarding the merits of his claims.

to the Director by virtue of the appeals process. Thus, through the appeals process, the Director finally decided the allocation in this case. In addition, the appointing authority's failure to conduct performance evaluations of Renteria does not prohibit reallocation of his position. Renteria relies upon sections 24–50–118(2) and 24–50–124(1), 10B C.R.S. (1988). Section 24–50–118(2) states, "The evaluation of performance shall be used as a factor in compensation, promotions, demotions, removals, reduction of force and all other transactions in which considerations of quality of service are properly a factor." Section 24–50–124(1) similarly states:

> When certified employees are separated from state service due to lack of work, lack of funds, or reorganization, they shall be separated or demoted according to procedures established by rule. *Such procedure shall require that consideration be given to performance evaluations of the employees and seniority within the total state service.*

(Emphasis added.) Section 24–50–118(2) only requires that the evaluations "be used as a factor" in demotions and section 24–50–124(1) only requires that "consideration be given to performance evaluations of the employees" when employees are separated from state service or demoted due to reorganization. We cannot construe these provisions to mean that failure to conduct performance reviews bars a reallocation decision.

In conclusion, we reverse the district court's holding that DOLE had the burden of proof before the Panel and we uphold the Panel's reallocation decision. Renteria's claim that the reallocation was an improper disciplinary action is remanded to the district court with directions to remand the case to the Director who shall transfer the case to the Board for a hearing.